IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. CONGELIO,

    Plaintiff,

v.                                                      Civil Action No.

UNIVERSITY OF PITTSBURGH
OF THE COMMONWEALTH
SYSTEM OF HIGHER EDUCATION,

    Defendant,                          **JURY TRIAL DEMANDED**

## CIVIL COMPLAINT

AND NOW COMES Plaintiff, William A. Congelio, by undersigned counsel and files this Civil Complaint and in support thereof alleges the following:

### I.     JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §626(c)(1) and 28 U.S.C. §1331 and §1343(a)(4).

2. Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. §626 because:

   a. On March 18, 2021, Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission alleging age discrimination;

   b. More than 60 days have passed since Plaintiff filed his Charge of Discrimination;

   c. On April 14, 2021, the Equal Employment Opportunity Commission issued to Plaintiff a Right to Sue Notice; and

   d. Plaintiff has filed this Complaint within 90 days of receiving the Right to Sue Notice.

## II.  THE PARTIES

3. Plaintiff, William A. Congelio, is an adult individual who resides at 152 Irishtown Road Ext., Venetia, PA 15367.

4. Plaintiff is over 60 years of age.

5. Defendant, University of Pittsburgh of the Commonwealth System of Higher Education is now, and was at all times relevant to Plaintiff's claims, an institution of higher education with a registered address of 4200 Fifth Ave, Pittsburgh, PA 15260.

6. At all times relevant, the University of Pittsburgh is an employer within the meaning of the Age Discrimination in Employment Act.

7. The University of Pittsburgh includes a School of Law ("Law School") with its principal place of business located at 3900 Forbes Avenue, Pittsburgh, PA 15260.

8. At all times relevant, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees who conducted themselves within the scope and course of their employment.

## II.  THE FACTS

9. Plaintiff is a licensed attorney in the Commonwealth of Pennsylvania.

10. Plaintiff is also licensed to practice law in the Federal Courts.

11. Plaintiff worked as an intern for Judge John F. Bell in the Washington County Court of Common Pleas.

12. Plaintiff has practiced law in Pennsylvania as a private practitioner.

13. Plaintiff served as the Court Custody Hearing Officer from 2006 to 2009 in the Court of Common Pleas of Washington County.

14. As a Custody Hearing Officer, Plaintiff presided over custody proceedings.

15. In 2005 Duquesne University School of Law hired Plaintiff as Supervising Attorney for the Duquesne Family Law Clinic.

16. In that capacity Plaintiff taught law students a substantive law course in custody, support, and other family law topics.

17. In addition, in that capacity the Plaintiff administered the Family Law Clinic which entailed assisting law students in representing indigent clients and instructed students in the preparation, filing and presentation of pleadings before the Court of Common Pleas, Family Law Division in Allegheny County.

18. After working for Duquesne Law School, the Law School recruited and hired the Plaintiff to be a Supervising Attorney of the University School of Law Family Law Clinic.

19. Plaintiff, shortly after commencing his employment with the Law School, was appointed the Director of the School of Law Family Law Clinic.

20. As Director, Plaintiff continued to supervise law students in the preparation, filing and presentation of pleadings to the Family Division Judges of the Allegheny County Court of Common Pleas.

21. In addition, Plaintiff lectured on subjects relevant to the clinic's work.

22. In his position as the Director, the Plaintiff has cultivated strong working relationships with the Allegheny Court of Common Pleas Family Divisions *Pro Se* Motion/Self-Help Family Division's administrative staff,

23. Plaintiff has a working knowledge of the procedural and substantive requirements for practicing law in the Family Division in the Allegheny County Court of Common Pleas.

24. While serving in Plaintiff's respective positions at both Duquesne and at the University of Pittsburgh, Plaintiff received excellent evaluations from his students and from the faculty.

25. Plaintiff is highly regarded by the Judges in the Family Division of the Court of Common Pleas of Allegheny County as well as other Judges. Attached hereto and Marked Exhibit "A" is a copy of the Plaintiff's resume

26. Plaintiff has over 15 years of hands-on experience in teaching/mentoring law students in clinical practice in Family Law.

27. On May 6, 2019, Plaintiff was reappointed to the University of Pittsburgh School of Law faculty for the 2019-20 academic year as a Visiting Professor of Law and Director of the Family Clinic.

28. Around the time the Plaintiff was reappointed for the 2019-20 academic year, the Law School informed the Plaintiff that his position as a Visiting Professor was being eliminated at the end of the 2019-20 Academic Year because the entire University of Pittsburgh had eliminated the position of Visiting Professor. See May 6, 2019 letter from Amy Wildermuth to Plaintiff attached hereto and Marked Exhibit "B".

29. When the Law School advised the Plaintiff that the University was eliminating the position of Visiting Professor, The Law School was aware that the Plaintiff wanted to continue working for the Law School.

30. The Law School could have continued to employ the Plaintiff as Director of the Family Law Clinic by designating the Plaintiff as permanent faculty when the Plaintiff's visiting professorship contract ended.

31. Although the chances of the Law School finding a replacement for the Plaintiff who possessed anything close to the Plaintiff's experience, qualifications and ability were extremely unlikely, the Law School, nonetheless, advertised for a new Director of the Family Law Clinic.

32. The position's duties stated in the advertisement mirrored the duties the Plaintiff had been successfully performing for the past 15 years.

33. Defendant created a Search Committee ("Committee") to make a recommendation of a candidate to the ultimate decision makers.

34. The Committee members were Shelia Velez-Martinez (Clinic Director); Tomar Pierson-Brown (Clinic Director); Mary Crossley (Professor and Chair of Search Committee); and a law student.

35. Plaintiff submitted his application and his resume for the position on August 19, 2019, confirming the fact that the Plaintiff desired to keep working for the Law School. Attached hereto and marked Exhibit "C" is a copy of the Plaintiff's application.

36. On September 13, 2019, the Committee interviewed Plaintiff.

37. During the meeting, Ms. Martinez made it a point to let the Plaintiff know that there were "a number of young people" who had applied for the position.

38. The above referenced comment was the expression of the Law School's desire to have the Plaintiff retire when Plaintiff's contract expired.

39. On October 11, 2019, Ms. Crossley informed Plaintiff that the Committee decided not to recommend the Plaintiff for the job.

40. On May 6, 2020, having heard nothing about the status of the hiring process, Plaintiff received an email from Haider Ala Hamoudi, Vice Dean of the Law School, in which

Plaintiff learned that someone had been hired for the position. See, email attached hereto and marked as Exhibit "D."

41. In the May 6, 2020 email the Plaintiff learned the position of Director of the Famiy Law Clinic was Jabeen Adawi.

42. Ms. Adawi is a young attorney, under 40 years of age, from Washington D.C. who had focused her legal career working in the field of gender-based violence and crime victims' rights.

43. Custody cases made up the majority of cases handled by the students in the Family Law clinic.

44. Many of the custody cases dealt with issues where grandparents or other family members had to intervene in the care of minor children due to a parent or parents having succumbed to opioid or some other drug addiction.

45. Ms. Adawi had no experience or background in custody law

46. When hired, Ms. Adawi did not hold a Pennsylvania Law License.

47. Ms. Adawi had no experience or background or knowledge of the Allegheny County Court system.

48. Upon learning the identity of the Plaintiff's replacement, the Plaintiff then realized that the Committee never intended to hire the Plaintiff for the position due to his age, but allowed him to have an interview with the Committee as a coverup of the Law School's plan of forcing the Plaintiff to retire from the Law School when Plaintiff's contract expired.

49. However, Plaintiff felt that the disruptions caused by the Covid-19 Pandemic and the Pandemic's effect on academic life could lead to Ms. Adawi ultimately not assuming the position when the 2020-2021 Academic Year began, in that the temporary cancellation of the

Family Law Clinical Program for the 2020-2021 academic year was possible in light of the effects of the Pandemic on student enrollment, the restrictions being placed on physical access to the Courts and the difficulties with having face-to-face meetings with clients.

50. Further, in light of the Pandemic and the consequent uncertainty as to how events would unfold going forward, Plaintiff felt that the new hire might want to stay in Washington, D.C., where she lived, instead of moving to a new city at such a perilous time.

51. If the Family Law Clinical Program for the 2020-2021 academic year were cancelled, and Ms. Adawi, as a result, could not take the position, or Ms. Adawi felt that moving in the midst of the Pandemic was unwise, there remained the possibility the Plaintiff would be needed to revive the Program.

52. When the 2020-2021 academic year began and no information came to the Plaintiff attention that the Family Law Clinic had been cancelled, Plaintiff understood that the Law School was never going to turn to the Plaintiff to keep the Clinic operating.

53. The disparity between the qualifications of the Plaintiff versus Ms. Jabeen Adawi is striking, and the decision to hire Ms. Adawi instead of Plaintiff can only be explained by the desire of the Law School to force the Plaintiff into retirement.

54. There is no logical reason to explain why the Defendant would not have simply hired the Plaintiff to continue his excellent work he was doing as the Director of the Family Law Clinic, but for the interjection of age discrimination into the hiring process.

55. Defendant chose not to hire the Plaintiff, based solely upon the Law School's desire to force the Plaintiff to retire.

56. In the alternative, forcing someone to retire, is a violation of the Age Discrimination in Employment Act.

57. As a result of the non-renewal of Plaintiff's contract, the failure to change Plaintiff's position from Visiting Professor to Permanent Faculty, the refusal to hire the Plaintiff for the position of Director of the Law School's Family Law Clinic, and the failure to offer the Plaintiff any alternate position, the Law School forced the Defendant to retire.

58. Forcing an employee to retire based upon age is a violation of the Age Discrimination in Employment Act.

59. Plaintiff's last day of employment with the Defendant was May 31, 2020.

### III. VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

60. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 59, as if they were fully stated herein.

61. Defendant did not hire Plaintiff because of his age, and in so doing violated the Age Discrimination in Employment Act.

62. In the alternative, by forcing the Plaintiff to retire, the Defendant violated the Age Discrimination in Employment Act.

63. Defendant's violation of the Age Discrimination in Employment Act was willful.

WHEREFORE, Plaintiff demands judgement against the Defendant as follows:

a. That Defendant be required to compensate Plaintiff for the full value of wages and benefits he would have received from May 31, 2020 to the present;

b. Front pay;

c. That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the amount of wages due and owing Plaintiff as provided by 29 U.S.C. §626 (b) and

    §216 (b);

   d. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

   e. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

By: s/ Ryan R. Mick  
    Ryan R. Mick, Esquire  
    Pa I.D. No. 314595  
    310 Grant Street, Suite 2317  
    Pittsburgh, PA 15219  
    (412) 471-3800  
    ryanandmike@mickwallisch.com

By: s/ John Newborg  
    John Newborg, Esquire  
    Pa. I.D. No. 22276  
    225 Ross Street, 4th Floor  
    Pittsburgh, PA 15219  
    (412) 874-9442  
    newborglaw@gmail.com