IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM A. CONGELIO,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,<br><br>    Defendant. | 2:21-cv-902-NR |

## MEMORANDUM OPINION

Deadlines are relevant only if enforced. Pertinent here, Plaintiff William Congelio—bringing a claim of age discrimination against his former employer, Defendant University of Pittsburgh—had 300 days to file a Charge of Discrimination with the EEOC. The 300-day clock started ticking once the University notified Mr. Congelio of its adverse employment decision, which Mr. Congelio alleges was age discrimination. Mr. Congelio, according to the University, did not meet the deadline.

As a result, the University now moves to dismiss Mr. Congelio's single Age Discrimination in Employment Act claim. It argues that Mr. Congelio's claim must be dismissed with prejudice because he failed to timely exhaust his administrative remedies. Mr. Congelio disagrees, asserting that he pled sufficient facts to survive dismissal, or that equitable tolling saves his claim.

After careful consideration, the Court agrees with the University and will grant its motion to dismiss. The face of Mr. Congelio's complaint shows that he did not timely file the Charge with the EEOC. And while equitable tolling can sometimes

excuse a missed deadline, the remedy is rare and only sparingly applied—and Mr. Congelio has not shown the doctrine's applicability here.

Because Mr. Congelio missed the 300-day deadline to file his EEOC Charge, and equitable tolling does not apply, his ADEA claim must be dismissed. Further, because any additional amendments would be futile, dismissal with prejudice is proper.

## FACTUAL & PROCEDURAL BACKGROUND

Taking the amended complaint's factual allegations as true, the relevant facts are as follows. Beginning in 2014, Mr. Congelio worked at the University's law school as the director of its Family Law Clinic. ECF 3, ¶¶ 18-22; ECF 3-1. In this role, he served as a Visiting Clinical Assistant Professor of Law. ECF 3-2. In May 2019, the University re-appointed Mr. Congelio to the same visiting professor role for the 2019-20 academic year. ECF 3, ¶ 27; ECF 3-2. In doing so, however, the University also informed Mr. Congelio that his visiting professor position was being eliminated following the 2019-20 academic year, pursuant to the University's policy of limiting visiting faculty appointments to three years. ECF 3, ¶ 28; ECF 3-2.

The University thus decided to hire a full-time faculty member to serve as Director of the Family Law Clinic for the 2020-21 academic year and beyond—Mr. Congelio applied for the position. ECF 3, ¶¶ 28-35. In September 2019, the University's search committee interviewed Mr. Congelio for the position. *Id.* at ¶ 36. During the interview, one of the search committee members stated that "a number of young people" had applied, which Mr. Congelio construed as "the expression of the Law School's desire to have the Plaintiff retire when Plaintiff's contract expired" at the end of that academic year. *Id.* at ¶¶ 37-38. The next month, the search committee informed Mr. Congelio it was not going to recommend him for the job. *Id.* at ¶ 39.

Seven months later, on May 6, 2020, Mr. Congelio received an email from the Vice Dean of the University's law school. *Id.* at ¶ 40. The Vice Dean's email informed

Mr. Congelio that someone had been hired for the director position, and it identified the individual. *Id.* at ¶¶ 40-41. The Vice Dean's email also asked Mr. Congelio to help introduce the new hire to local contacts, to help her prepare to lead the Family Law Clinic in the upcoming academic year. ECF 3-4. Upon receiving the Vice Dean's email, Mr. Congelio "realized that the [search] Committee never intended to hire the Plaintiff for the position due to his age, but allowed him to have an interview with the Committee as a coverup of the Law School's plan of forcing the Plaintiff to retire from the Law School when Plaintiff's contract expired." ECF 3, ¶ 48. Following the expiration of his one-year contract, Mr. Congelio's last day of employment with the University was May 31, 2020. *Id.* at ¶ 59.

Mr. Congelio, however, "felt that the disruptions caused by the Covid-19 Pandemic" could cause the new hire to not assume the director position, or cause the Family Law Clinic to be cancelled for the academic year, resulting in the University turning to Mr. Congelio for help leading the clinic. *Id.* at ¶¶ 49-52. But this did not happen, and the 2020-21 academic year began as normal. *Id.* at ¶ 52.

Mr. Congelio now alleges that the University discriminated against him because of his age. *Id.* at ¶¶ 53-63. On March 18, 2021, Mr. Congelio filed a Charge with the Equal Employment Opportunity Commission. *Id.* at ¶ 2(a).

He then filed suit in federal court several months later. ECF 1. After filing his initial complaint, Mr. Congelio filed an amended complaint, bringing a single claim that the University violated the Age Discrimination in Employment Act. ECF 3. The University now moves to dismiss the complaint with prejudice, arguing that Mr. Congelio failed to timely exhaust his administrative remedies. ECF 7. The parties filed their respective briefs, and the matter is now ready for disposition.

## **LEGAL DISCUSSION & ANALYSIS**[1]

Because Mr. Congelio did not timely exhaust his administrative remedies, the Court must dismiss his claim. The Court will therefore grant the University's motion to dismiss, and dismiss Mr. Congelio's ADEA claim with prejudice.[2]

### **I.  Mr. Congelio did not timely exhaust his administrative remedies.**

To bring a claim under the ADEA, a plaintiff must first file a charge with the EEOC within 300 days of the alleged discrimination. *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382-83 (3d Cir. 2007); *Koller v. Abington Mem'l Hosp.*, 251 F. Supp. 3d 861, 864 (E.D. Pa. 2017) (citations omitted). If the plaintiff fails to do so, "a judicial complaint under the ADEA will [generally] be dismissed for failure to exhaust administrative remedies." *Ruehl*, 500 F.3d at 382.

The 300-day deadline is calculated from the time the employee is notified of the discriminatory adverse action, not when the employee actually suffers the adverse action. Once the employee is notified of the adverse decision, it does not matter, to trigger the 300-day deadline, when the adverse action comes to fruition or is implemented. That is, "an adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)). And the defendant bears the ultimate burden of showing that its motion to dismiss should be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

[2] The complaint may be dismissed at the present stage because Mr. Congelio's failure to exhaust his administrative remedies is apparent on the face of the complaint. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *Cunningham v. Albright Coll.*, No. 5:20-cv-1429, 2021 WL 2156255, at *5-6 (E.D. Pa. May 27, 2021).

action and termination is a delayed but inevitable result." *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980)). The "mere speculative possibility of continued employment" does not delay the start of the 300-day window. *Id.* at 853. Put differently, "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

Higher courts have therefore rejected employees' arguments that the deadline to exhaust administrative remedies only runs once the employee actually suffers the adverse employment action. *See, e.g.*, *id.* ("[T]he filing limitations periods [commenced] … at the time the tenure decision was made and communicated to [Plaintiff]. That is so even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later. … It is simply insufficient for [Plaintiff] to allege that his termination gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." (cleaned up)); *Watson*, 235 F.3d at 856 ("[I]t does not matter that [Plaintiff] was notified of his termination several weeks before his ultimate discharge. As a matter of law, notice of an 'operative decision' of termination is not equivocal merely because it was given in advance of a designated date on which employment terminated." (cleaned up)); *see also Ruehl*, 500 F.3d at 383 ("[Plaintiff] had 300 days from December 10, 1997, the day he was notified his job would be eliminated, to file an EEOC charge.").

Accepting the amended complaint's allegations as true and drawing all reasonable inferences in Mr. Congelio's favor, the latest date on which Mr. Congelio was notified of the University's discriminatory adverse action was May 6, 2020. On that date, the University notified Mr. Congelio that the University had hired someone else for the full-time position of Director of the Family Law Clinic. ECF 3, ¶¶ 40-41.

Upon learning this, Mr. Congelio "realized that the [University] never intended to hire [Mr. Congelio] for the position due to his age, but allowed him to have an interview … as a coverup of the [University's] plan of forcing [Mr. Congelio] to retire from the [University] when [his] contract expired." *Id.* at ¶ 48. Thus, taking his allegations as true, on May 6, 2020, Mr. Congelio learned that (1) the University was not hiring him as Director of the Family Law Clinic, and (2) he was the victim of the University's age discrimination.[3]

Thus, Mr. Congelio had to file a Charge of Discrimination with the EEOC by March 2, 2021, *i.e.*, within 300 days of May 6, 2020. *See, e.g.*, *Ricks*, 449 U.S. at 258 ("In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the [adverse employment] decision was made and communicated to [Plaintiff]."); *Ruehl*, 500 F.3d at 382-83. But Mr. Congelio did not file his Charge with the EEOC until March 18, 2021. ECF 3, ¶ 2(a); *see also* ECF 8-1. Mr. Congelio therefore did not timely exhaust his administrative remedies, making dismissal of his ADEA claim appropriate. *Ruehl*, 500 F.3d at 382.

Mr. Congelio raises several arguments in opposition to the University's motion to dismiss. But none of his arguments prevail. Mr. Congelio first emphasizes that the COVID-19 pandemic caused uncertainty in the academic school year, so it was

---

[3] The University obviously made its employment decision before May 6, 2020, as the University had already hired someone else for the position. Indeed, according to Mr. Congelio's allegations, he was arguably notified of the discrimination months earlier, thus making his attempted administrative exhaustion even more untimely. For example, in September 2019, the University interviewed Mr. Congelio for the position; during the interview, one of the interviewees "made it a point to let [Mr. Congelio] know that there were 'a number of young people' who had applied for the position," which Mr. Congelio construed as "the expression of the [University's] desire to have [Mr. Congelio] retire when [his] contract expired." ECF 3, ¶¶ 37-38. The next month, the University's search committee informed Mr. Congelio that it was not going to recommend him for the position. *Id.* at ¶ 39. Yet the Court must draw all reasonable inferences in Mr. Congelio's favor at this stage. And because Mr. Congelio did not learn, definitively, that someone else had been hired for the position (instead of him) until May 2020, the Court calculates the 300-day deadline from May 6, 2020.

unclear whether the Family Law Clinic would continue or whether the new hire would revoke her acceptance of the director position. ECF 3, ¶¶ 49-51; ECF 12, pp. 4-6. He states that his argument would fail save for "the great cloud of uncertainty" the pandemic caused. ECF 12, p. 6. Yet after stating that the pandemic caused worldwide uncertainty, Mr. Congelio simply concludes that he's pled enough facts to "satisfy the ADEA's Timeliness element." *Id.*

The Court disagrees. Any uncertainty caused by COVID-19 does not change the fact that Mr. Congelio learned of the University's discrimination against him on May 6, 2020. As discussed above, it does not matter when the adverse action actually comes to fruition. What matters is when Mr. Congelio learned of the discriminatory adverse employment decision—that is, when the University decided not to hire Mr. Congelio for the director position because of his age. At that point, the 300-day deadline was triggered. Thus, Mr. Congelio's subsequent speculations that he may not ultimately suffer the adverse employment action because of COVID-19 is unpersuasive.[4] *See, e.g.*, *Watson*, 235 F.3d at 852-53 ("[A]n adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that action and termination is a delayed but inevitable result. … [T]he mere speculative possibility of continued employment does not alter [the] rule[.]").

By May 6, 2020, the University had informed Mr. Congelio that his current visiting position would be ending at the end of the month, that he had not been hired for the full-time director position, that someone else had been hired for the full-time director position, and that the University and new hire were moving forward in preparing for the upcoming academic year. *See* ECF 3, ¶¶ 27-28, 40-41; ECF 3-4. Put

---

[4] This is not to mention that if the Family Law Clinic was cancelled, as Mr. Congelio speculated, Mr. Congelio still would not be hired for the position, as there would be no clinic for him to have directed.

simply, then, Mr. Congelio's alleged adverse employment action was the "delayed but inevitable result," thus triggering the 300-day window to file the EEOC Charge. *See Watson*, 235 F.3d at 853. Mr. Congelio's speculative beliefs and hopes do not change that outcome.

Mr. Congelio next argues that dismissal is improper because there are "competing factual scenarios" as to when Mr. Congelio learned of the adverse employment decision. ECF 12, p. 6. Not so. While there are several dates when Mr. Congelio arguably learned of the discrimination against him, all of them occurred more than 300 days before he filed the Charge. May 6, 2020 is the latest possible date. Thus, any "competing factual scenarios" are ultimately irrelevant because Mr. Congelio failed to timely exhaust his administrative remedies regardless of which date is used.

## II. Equitable tolling does not apply.

Finally, Mr. Congelio argues that equitable tolling applies. ECF 12, p. 7. The Court disagrees.

"The ADEA's timely exhaustion requirement is a non-jurisdictional prerequisite that, like a statute of limitations, is subject to equitable tolling. Equitable tolling stops the statute of limitations from running when an EEOC charge's accrual date has already passed." *Ruehl*, 500 F.3d at 384 (citations omitted). Equitable tolling, however, is applied only sparingly. *Pizio v. HTMT Glob. Solutions*, 555 F. App'x 169, 176 (3d Cir. 2014) (citations omitted). Indeed, equitable tolling is only appropriate in three circumstances generally: "(1) Where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (cleaned up). In addition, to reap the benefits of equitable tolling, the

plaintiff must show that he exercised reasonable diligence—"mere excusable neglect is not sufficient." *Id.* (citations omitted). And it's the plaintiff who bears the ultimate "burden of demonstrating that he exercised reasonable diligence and that equitable tolling is appropriate under the circumstances." *Id.* (citation omitted); *see also Ruehl*, 500 F.3d at 384.

In asserting that equitable tolling saves his claim, Mr. Congelio simply argues that he filed his EEOC Charge only two weeks late. ECF 12, p. 7. A little late, however, is still late. And Mr. Congelio provides no authority for his argument. Indeed, courts must apply equitable tolling "only sparingly and in extraordinary situations" to avoid converting it into a remedy "that can be readily invoked by those who have missed carefully drawn deadlines." *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997). Thus, it is insufficient to simply assert that he missed the deadline by, what he views is, just a little bit. *See, e.g.*, *Timm v. Manor Care, Inc.*, No. 2:06-cv-152, 2006 WL 6451234, at *3-4 (W.D. Pa. March 20, 2006) (McVerry, J.) (dismissing plaintiff's age discrimination claim because she failed to timely exhaust her administrative remedies after she filed her administrative Charge one day late). Equitable tolling does not apply here.[5]

### III. Dismissal with prejudice is appropriate.

For all of these reasons, Mr. Congelio's ADEA claim must be dismissed. And dismissal with prejudice is appropriate. Mr. Congelio has already amended his

---

[5] Moreover, Mr. Congelio does not show why equitable tolling is appropriate under any of the three situations courts have laid out. *See Pizio*, 555 F. App'x at 176. And while the University argues the point in its motion, Mr. Congelio does not argue that COVID-19 establishes a basis for equitable tolling. ECF 12, p. 7. Regardless, the Court finds no support in his allegations establishing that equitable tolling is warranted. The University did not "actively misle[a]d" Mr. Congelio, thereby "caus[ing his] non-compliance." *Pizio*, 555 F. App'x at 176. As noted above, by May 6, 2020, the University expressly informed him that it had hired another person for the director position, and it was looking to acclimate the new hire in preparation for the upcoming academic year. Nor was Mr. Congelio "in some extraordinary way …

complaint to try to remedy his untimely EEOC filing, to no avail. Additionally, the Court finds that the allegations Mr. Congelio has pled clearly demonstrate that he failed to timely exhaust his administrative remedies, and thus he cannot bring his claim. In his brief, Mr. Congelio also does not point out any new facts or other grounds that could give rise to equitable tolling, nor does he request leave to file a second amended complaint. The Court therefore determines that any further amendment would be futile, so dismissal with prejudice is appropriate. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court[.]" (cleaned up)).

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss, and dismiss the amended complaint with prejudice. An appropriate order follows.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

prevented from asserting his rights." *Id.* To the extent Mr. Congelio could point to COVID-19 as the basis for tolling (which he does not do in either his amended complaint or his brief), the pandemic generally did not prevent Mr. Congelio from exercising his rights, for he filed his (late) Charge with the EEOC amidst the pandemic. Further, his complaint lacks facts showing that he exercised reasonable diligence to timely file his Charge with the EEOC, as required. Rather, his delay was attributable to his subjective speculations of the impact COVID-19 would have on the academic year. But "mere excusable neglect is not sufficient." *Id.* (cleaned up).